# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NEVRO CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-291-CFC |
| | ) | |
| NALU MEDICAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT NALU MEDICAL, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS UNDER RULE 12(b)(6)

OF COUNSEL:

A. James Isbester
Megan M. Chung
KILPATRICK TOWNSEND &
STOCKTON LLP
12255 El Camino Real, Suite 250
San Diego, CA  92130

Maureen P. Long
KILPATRICK TOWNSEND &
STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101-2400

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendant*

Dated:  May 4, 2020

# TABLE OF CONTENTS

I.     INTRODUCTION & SUMMARY OF THE ARGUMENT .........................1

II.    STATEMENT OF FACTS ..................................................................3

III.   ARGUMENT..................................................................................8

     A.     Legal Standard.....................................................................8

     B.     Nevro's Conclusory Allegations of Direct Infringement Fail to Meet the Heightened Pleading Standards of *Twombly* and *Iqbal* .................9

     C.     Nevro's Allegations Do Not Support Direct Infringement by Nalu...12

     D.     No Allegations Exist that the Nalu Neurostimulation System Actually Operates in a Patient or Been Programmed to Generate Therapy at Claimed Frequencies ........................................................14

IV.    CONCLUSION...............................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 US. 662 (2009)......................................................................1, 8, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................1, 8, 9

*Boston Scientific Corp. v. Nevro Corp.*,
415 F. Supp. 3d 482 (D. Del. 2019).........................................8, 9, 11

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002) .............................................................8

*Davis v. Abington Mem'l Hosp.*,
765 F.3d 236 (3d Cir. 2014) ................................................................9

*Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
No. CV 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018) ............13, 14

*Judin v. United States*,
110 F.3d 780 (Fed. Cir. 1997) ...........................................................10

*Macronix Int'l Co. v. Spansion Inc.*,
4 F. Supp. 3d 797 (E.D. Va. 2014) ......................................................9

*Modern Telecom Sys., LLC v. TCL Corp.*,
No. 17-583-LPS-CJB, 2017 WL 6524526 (D. Del. Dec. 21, 2017) ...............8, 9

*Raindance Techs., Inc. v. 10x Genomics, Inc.*,
No. 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016).........................8, 9

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
208 F.3d 981 (Fed. Cir. 2000) ...........................................................10

**Other Authorities**

Fed. R. Civ. P. 8(a)...............................................................................10

Fed. R. Civ. P. 12(b)(6)...............................................................................................1

## I.   INTRODUCTION & SUMMARY OF THE ARGUMENT

Defendant Nalu Medical, Inc. ("Nalu") moves to dismiss Plaintiff Nevro Corp.'s ("Nevro") Complaint (D.I. 1) for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The heightened pleading standards of *Twombly*[1] and *Iqbal*[2] require more than conclusory statements and threadbare recitals of the elements of a cause of action. A plaintiff must allege facts that plausibly indicate that the accused products contain each of the limitations found in the claim.  Nevro fails to allege facts that plausibly indicate Nalu's Neurostimulation System contains each limitation of the asserted claims.

Nevro accuses Nalu of directly infringing claim 1 of both U.S. Patent Nos. 10,471,258 ("'258 patent") and 9,333,358 ("'358 patent") (collectively, "the Asserted Patents").  The two claims are similar.  Both are generally directed to a spinal cord modulation system that contains an implantable device that delivers a non-paresthesia-producing therapy signal to the patient's spinal cord region, where a portion of that therapy signal falls within a specific frequency range.  The '258 patent claim 1 requires a "pulse generator that, *in operation*, generates a non-paresthesia-producing therapy signal, wherein at least a portion of the therapy

---

[1] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
[2] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

signal has a frequency" within a range "between 1.5kHz and 15kHz."  Instead of a "pulse generator," the '358 patent claim 1 requires:  "a signal generator *programmed* to generate a non-paresthesia-producing therapy signal."  The frequency of at least a portion of the programmed therapy signal, however, falls into the identical range as that of the '258 patent, claim 1.

Nevro's Complaint fails to state a direct infringement claim for several reasons.  First, Nevro has only conclusory allegations parroting the claim language regarding a generator that "in operation" generates or is "programmed to generate" a non-paresthesia-producing therapy signal.

Second, as Nevro alleges and as Exhibit 3 to the Complaint demonstrate, Nalu's device is programmed and operated according to the parameters set by the clinician (i.e. doctor), responding to patient preferences during surgery or after surgery.  Thus, the accused device can only potentially meet these claim limitations if the clinician in the field causes the device to be programmed so that, "in operation" the claim limitations are met. .  Nalu's manufacturing, sale, import or export cannot directly infringe according to Nevro's own complaint.

Most importantly, Nevro's own complaint contradicts its conclusion that there is any infringement (direct or indirect).  As Nevro has accurately alleged, the FDA only cleared the Nalu product for frequencies up to 1.5 kHz, but it can also operate at frequencies as low as 2 Hz.  Nowhere does Nevro offer evidence of

unapproved or "off-label" use of the Nalu device.  Nowhere does Nevro offer reason to believe that Nalu is encouraging clinicians in the field to use the Nalu device in ways that are not approved by the FDA.  Finally, there is no allegation that any Nalu device has been programmed or actually operates in the field to provide a therapy signal—or any portion thereof—at 1.5 kHz, let alone any frequency within the claimed range.

Nevro has identified to the Court two patent claims that, it contends, accord Nevro with exclusivity in certain kinds of therapies, using signals above 1.5 kHz. What it has not done is shown the Court a plausible basis for contending that Nalu has directly or indirectly impinged upon that region of purported exclusivity. Nevro's Complaint should be dismissed for failure to state a claim for relief.

## II.    STATEMENT OF FACTS

Nalu is a small start-up medical device company.  Nalu received FDA clearance in March 22, 2019 for its Neurostimulation System.  D.I. 1-1 at 96 (Compl. Ex. 3).  Nalu has plans for a full commercial launch of its Nalu Neurostimulation System in 2020.  D.I. 1 ¶7.

On February 28, 2020, Nevro filed its Complaint, asserting infringement of claim 1 of the '258 patent and claim 1 of the '358 patent.  *Id*. ¶¶41-42, 49-50.

Reproduced below side-by-side are claim language and Nevro's allegations specific to the claims quoted from Nevro's Complaint.

| '258 Patent Claim 1 (D.I. 1 ¶41) | Nevro Allegation (D.I. 1 ¶42) |
|---|---|
| 1. A spinal cord modulation system for treating a patent, the system comprising:<br>    a pulse generator that, in operation, generates a non-paresthesia-producing therapy signal, wherein at least a portion of the therapy signal has a frequency in a frequency range between 1.5 kHz and 15 kHz; | The Nalu Neurostimulation System is a spinal cord modulation system for treating a patient, which includes a pulse generator that, in operation, generates a non-paresthesia-producing therapy signal.  Nalu represents in its user manual that the Nalu Neurostimulation System generates frequencies up to and including 10,000 Hz and Nalu has FDA clearance to market the system in the United States for use at frequencies up to and including 1,500 Hz. |
|     one or more implantable electrical contacts electrically coupled to the pulse generator and designed to deliver the therapy signal to the patient's spinal cord region; and | The Nalu Neurostimulation System includes implantable leads with electrical contacts electrically coupled to the pulse generator, which are designed to deliver the therapy signal to the patient's spinal cord region. |
|     an external power source, wherein the external power source is wirelessly coupleable to the pulse generator to transmit power to the pulse generator via RF signals | The Nalu Neurostimulation System includes an external power source, referred to by Nalu as the Therapy Disc.  The Therapy Disc is wirelessly coupleable to the pulse generator to transmit power to the pulse generator via RF signals. |

| '358 Patent Claim 1 (D.I. 1 ¶49) | Nevro Allegation (D.I. 1 ¶50) |
|---|---|
| 1. A spinal cord modulation system for treating a patent, the system comprising:<br>    an implantable signal delivery device configured for delivering a therapy | The Nalu Neurostimulation System is a spinal cord modulation system for treating a patient, which includes an implantable signal delivery device configured to deliver a therapy signal |

| '358 Patent Claim 1 (D.I. 1 ¶49) | Nevro Allegation (D.I. 1 ¶50) |
|---|---|
| signal to one or more locations in the patient's spinal cord region; | to one or more locations in the patient's spinal cord…. |
| a signal generator programmed to generate a non-paresthesia-producing therapy signal, wherein at least a portion of the therapy signal has a frequency in a frequency range between 1.5 kHz and 50 kHz at an amplitude that provides pain relief without generating paresthesia; | …implantable signal delivery device configured to deliver a therapy signal to one or more locations in the patient's spinal cord that, in operation, generates a non-paresthesia-producing therapy signal.  Nalu represents in its user manual that the Nalu Neurostimulation System generates frequencies up to and including 10,000 Hz and Nalu has FDA clearance to market the system in the United States for use at frequencies up to and including 1,500 Hz. |
| and wherein the signal generator is in electrical communication with the implantable signal delivery device; and | The Nalu Neurostimulation System has a signal generator that is in electrical communication with the implantable signal delivery device …. |
| a power source, wherein the  power source is configured to power the signal generator. | and a power source, referred to by Nalu as the Therapy Disc, that is configured to power the signal generator. |

As can be seen, Nevro frequently parrots the claim language in its allegations.

Nevro does provide additional allegations about the accused Nalu product. These allegations, however, are not tied to the asserted claims.  Nevro alleges that the Nalu Neurostimulation System includes an implantable pulse generator ("IPG") that "acts to help control therapy delivery." *Id*. ¶¶23, 25.  The Nalu IPG is powered by an externally-worn, battery powered device, *i.e.* Nalu's "Therapy

Disc," which powers the IPG using RF wireless transmission. *Id.* ¶¶29-30. "The Nalu Neurostimulation System is *configured* using a Clinical Programmer Application *during surgery and programming.* During this process, '[t]he programmer is responsible for *configuring the devices to deliver therapy according to clinician defined levels* and patient preferences[.]'" *Id.* ¶31(quoting D.I. 1-1 at 101) (italics added). Thus, Nevro alleges that the accused system is programmed during surgery to delivery therapy according to doctor's levels—not when Nalu manufactures or sells or ships the device. Nevro's Complaint also admits that the device is *not* programmed at Nalu's directions, but that of the doctor and patient.

Nevro further alleges that "[i]t is standard industry practice for the programmer to be an employee or agent of the SCS device company." *Id.* Nevro, however, does not allege that Nalu employs "the programmer."

According to Nevro, it found an instruction for use manual ("IFU") for a portion of the Nalu device on the internet. The source of the manual is not Nalu but rather, a website called "usermanual.wiki" (D.I. 1, fn 3); the purported date of the manual is June 8, 2017 (D.I. 1.1 at 119); the manual itself describes a device having a diameter of 7.5 cm, a thickness of 8 mm (0.8 cm), and a weight of 75 gms (*id* at 128). Nevro rests heavily on the fact that the manual states that the available stimulation parameters are frequency of "1Hz-10kHz." D.I. 1-1 at 128. On this

- 6 -

evidence, Nevro alleges that the Nalu system generates or delivers therapy at frequencies up to and including 10,000 Hz.  D.I. 1 ¶¶7, 42, 50.

That this is not a manual for the system that Nalu actually sells is readily apparent.  First, there is nothing to suggest a reliable source: just a random web scrapper.  Second, it is dated two years prior to the FDA approval.  Third, as the FDA approval that Nevro also attaches to its complaint details, both the size (0.8 cm thick instead of 1.5 cm for the approved device) and weight (75 grams instead of 80 grams) are different. Compare D.I. 1.1 at 128 to D.I. 1.1 at 113. Finally, inherent in Nevro's position is that the suggestion that Nalu provides clinicians with a manual that describes programming the Nalu device to operate a frequencies for which Nalu has never sought FDA approval and that are outside the express frequencies approved by the FDA.

Nalu's counsel informed Nevro's counsel of the deficiencies in the Nevro complaint by letter dated April 20, 2020.  Declaration of A. James Isbester ¶2. Specifically, Nalu notified that there is no allegation that the Nalu Neurostimulation System has ever operated in a patient or been programmed to generate a patient therapy at the frequencies required by the asserted claims, and that this cannot be cured.  *Id.*  Counsel for the parties discussed by telephone and further exchanged correspondence.  *Id.* ¶3.  On April 29, 2020, Nalu's counsel offered that Nalu would not oppose if Nevro wanted to amend its complaint to cite

or provide additional information.  *Id.* ¶4.  Nevro has not availed itself of this offer.

Accordingly, Nalu now brings this motion to dismiss.

## III.   ARGUMENT

### A.   Legal Standard

It is well settled that claims of direct patent infringement are subject to the

heightened pleading requirements of *Twombly* and *Iqbal*.  *See Modern Telecom

Sys., LLC v. TCL Corp.*, No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del.

Dec. 21, 2017); *see also Raindance Techs., Inc. v. 10x Genomics, Inc.*, No. 15-152-

RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016).  "To plead direct

infringement, a plaintiff must allege facts that plausibly indicate that the accused

products contain each of the limitations found in the claim."  *See Boston Scientific

Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 489 (D. Del. 2019)(J. Connolly)

(internal quotation marks omitted); *see also Catalina Mktg. Int'l, Inc. v.

Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002); *Modern Telecom*, 2017

WL 6524526, at *3; *Raindance*, 2016 WL 927143, at *2-3 (dismissing plaintiff's

patent complaint where the claims recited limitations related to "pressure" that the

complaint did not address).  After all, "[f]actual allegations that do not permit a

court to infer that the accused product infringes each element of at least one claim

are not suggestive of infringement."  *Modern Telecom*, 2017 WL 6524526, at *2,

n.5.  "The complaint must place the potential infringer on notice of what activity is

being accused of infringement.  To provide notice, a plaintiff must generally do more than assert that the product infringes the claim; it must show *how* the defendant plausibly infringes by alleging some facts connecting the allegedly infringing product to the claim elements."  *Boston Scientific*, 415 F. Supp. 3d at 489 (internal quotation marks and citation omitted; italics in original); *see SIPCO, LLC v. Streetline, Inc.*, No. 16-830-RA, 2017 WL 10795601, at *2 (D. Del. June 21, 2017) ("There are numerous district court decisions that require, to plausibly state a claim for patent infringement, that the complaint relate its factual allegations to an asserted claim of the patent").

### B.      Nevro's Conclusory Allegations of Direct Infringement Fail to Meet the Heightened Pleading Standards of *Twombly* and *Iqbal*

A complaint "must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  A complaint that "simply parrot[s] back the words of the claim and stating (without more)" that an accused product infringes that claim "is not helpful."  *See Modern Telecom*, 2017 WL 6524526, at *3; *Raindance,*, 2016 WL 927143, at *2-3; *Macronix Int'l Co. v. Spansion Inc.*, 4 F. Supp. 3d 797, 804 (E.D. Va. 2014) (holding that a complaint that does not contain specific factual allegations but instead "simply alleges that each element of a cited claim is infringed and then parrot[s] the claim language for each element . . . simply does not satisfy the notice

and showing requirements of Rule 8(a)").  Yet that is exactly what Nevro has done here with respect to several limitations of the exemplary claims.

Claim 1 of the '258 patent that requires "a pulse generator that, in operation, generates a non-paresthesia-producing therapy signal," Nevro simply reiterates the language:  "The Nalu Neurostimulation System is a spinal cord modulation system for treating a patient, which includes a pulse generator that, in operation, generates a non-paresthesia-producing therapy signal."  D.I. 1 ¶42.  Nevro has no allegation that Nalu's pulse generator "in operation" generates a non-paresthesia-producing therapy signal.[3]  Elsewhere in the Complaint, Nevro alleges that Nalu's devices deliver therapy *during surgery* and programming, i.e. in operation, "according to clinician defined levels and patient preferences" based on the FDA clearance submission.  *Id.* ¶31.  There are no factual, non-conclusory allegations about what the IPG is actually doing in operation in the patient.[4]  Nevro must plead factual allegations to give notice and it cannot simply rely upon exhibits without

---

[3] Nevro alleges and refers to abstracts and information from studies, many of which apparently were done outside the United States.  D.I. 1-1 at 133 n. 1-10 (listing centers in Australia and United Kingdom).  None of those studies actually state what therapy signal with what frequency was used in operation.

[4] Nevro had duty to investigate before filing the complaint to "at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device."  *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000); *see also Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) (sanctions for not obtaining a sample device, dissect or reverse-engineer it and compare sample device to the claims prior to filing the complaint).

explanations for Nalu to divine what Nevro may intend.  *See Boston Scientific*, 415

F. Supp. 3d at 489-90 (dismissing certain infringement claims because "Boston

Scientific makes no attempt to connect specific components of the accused systems

to elements of the asserted claims.  Nor does it explain how any of the 144 pages

of linked materials show such a connection.  A plaintiff, however, may not rely on

exhibits attached to the complaint as a substitute for pleading facts sufficient to

demonstrate its entitlement to relief.  A defendant should not be required to comb

through 144 pages of exhibits to understand the bases of a plaintiff's claims, and a

court should not have to parse 144 pages of exhibits to determine if they state facts

sufficient to demonstrate a plaintiff's entitlement to relief.")(internal quotation

marks omitted) (citation omitted).

Similar problem exists for the '358 patent.  Claim 1 of that patent requires

"an implantable signal delivery device configured for delivering a therapy signal to

one or more locations in the patient's spinal cord region; a signal generator

programmed to generate a non-paresthesia-producing therapy signal."  *Id.* ¶49.

Nevro essentially mirrors that language back:  "The Nalu Neurostimulation System

is a spinal cord modulation system for treating a patient, which includes an

implantable signal delivery device configured to deliver a therapy signal to one or

more locations in the patient's spinal cord that, *in operation, generates* a non-

paresthesia-producing therapy signal."  *Id.* ¶50 (emphasis added to highlight

- 11 -

difference from the claim language). But Nevro's allegations are devoid of the "signal generator programmed to generate" language. There are no factual allegations anywhere in the Complaint regarding "signal generator." This deficiency is exacerbated by another claim limitation which requires "wherein the signal generator is in electrical communication with the implantable signal delivery device." For this limitation, Nevro merely repeats the claim language: "the Nalu Neurostimulation System has a signal generator that is in electrical communication with the implantable signal delivery device…." *Id.* ¶ 50. There is no factual allegation in the Complaint regarding "implantable signal device." Thus, there is no notice provided as to what qualifies as "signal generator" as opposed to "implantable signal delivery device."

Each of these reasons justify dismissal of the Complaint.

### C.   Nevro's Allegations Do Not Support Direct Infringement by Nalu

As discussed above, the claims of the Asserted Patents require that the system provides certain *therapy signal in the patient during surgery* while it is "in operation" or being "programmed to generate" the therapy signal. The Complaint alleges that the Nalu Neurostimulation System deliver therapy during surgery "according to clinician defined levels and patient preferences." *Id.* ¶31. Thus, the claims are only infringed after sale to the doctor's offices and once surgically implanted. Contrary to the Complaint, Nalu's manufacture, sale, offer for sale,

- 12 -

import or export activities cannot infringe these claims due to the claim language. *See Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. CV 18-098 (MN), 2018 WL 6629709, at *2 (D. Del. Dec. 19, 2018) (dismissing *with prejudice* direct infringement claim when making, selling, offering to sell or importing the product itself cannot constitute direct infringement of method claims where every element of the claims are not met).[5]

Even Nalu's use is insufficient for direct infringement since Nevro has no allegations that Nalu itself programs or generates therapy signal in operation when Nalu used its devices.  Moreover, Nevro's allegations provide that FDA specifies that the doctor is the intended user and that it is also the doctor who instructs the programming for therapy signal delivery.  *Id.*; D.I. 1-1 at 101 ("A Clinician Programmer Application is provided to configure" the Therapy Disc, which is configured "according to clinician defined levels and patient preferences").  This is a separate reason to dismiss the complaint.

---

[5] While Nalu believes all of Nevro's claims should be dismissed with prejudice since Nevro cannot cure and allege in good faith that Nalu's devices practice the claimed frequency ranges (*see infra*. Section III.D), Nevro's direct infringement allegations based on manufacture, sale, offer for sale, import and export of devices should be dismissed with prejudice.  The claims require certain things to occur "in operation" or "programmed to," which only occurs after Nalu has sold and delivered the product to doctors.  *See Dodots*, 2018 WL 6629709, *5 n.6 (dismissing with prejudice since no amendment can cure the defect).

**D.      No Allegations Exist that the Nalu Neurostimulation System Actually Operates in a Patient or Been Programmed to Generate Therapy at Claimed Frequencies**

Claim 1 of the '258 patent further requires a pulse generator "that, in operation, generates" a signal, a portion of which has a frequency "between 1.5 kHz and 15 kHz."  Claim 1 of the '358 patent requires a signal generator that is "programmed to generate" a signal, a portion of which has a frequency between 1.5 kHz and 50 kHz.  There is no allegation in the Complaint that the Nalu Neurostimulation System has ever operated in a patient or been programmed to generate a patient therapy at such frequencies.

Nevro alleges that "Nalu represents in its user manual that the Nalu Neurostimulation System generates frequencies up to and including 10,000 Hz and Nalu has FDA clearance to market the system in the United States for use at frequencies up to and including 1,500 Hz."  D.I. 1 ¶¶7, 33, 42, and 50.  First, as admitted in Paragraph 32 and Exhibit 4 to the Complaint, Nalu's manual does *not* say Nalu or its system actually "generates" such frequency, but instead disclosed the available, possible parameters.  "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Dodots*, 2018 WL 6629709, at *1 (quoting *Secured Mail Sols. LLC v. Universal Wilde, Inc*., 873 F.3d 905, 913 (Fed. Cir. 2017)).

- 14 -

Second, whether the Nalu system *has the capability* to generate at the 10 kHz frequency the Complaint cites is irrelevant.  The claims require the system "in operation, generates" or has been "programmed to generate" at frequencies higher than 1,500 Hz.  There is no allegation that Nalu operates its system or programs the signal generator to generate at those frequencies.

Furthermore, Nevro misleads by relying on the 2017 IFU (Ex. 4 to the Complaint).  That document predates Nalu's FDA clearance by approximately two years.  As described above, it appears to describe a different physical piece of hardware from the device approved by the FDA. See *supra* II. And it lists a range of frequencies different from the range of frequencies for which Nalu applied for and obtained approval.  *Id.* Nevro should have known that the 2017 IFU is not accurate for the FDA cleared device.

The FDA approval allows Nalu's system to be programmed to operate at frequencies between 2 Hz  and 1,500 Hz.  There is no evidence that anyone has ever provided therapy with the approved Nalu system in the frequencies cited in the claims.  Nevro has not made any such allegations, even after Nalu has warned Nevro of the deficiencies in its complaint.  It is a reasonable inference that Nevro has made no such allegation because it cannot.

## IV.   CONCLUSION

Nevro's allegations of patent infringement are not supported by plausible facts.  The purported alignment between the claim language and Nalu system is merely conclusory parroting back of the claim language.  The facts included in the complaint demonstrate that it is not until the doctor places the product in actual use that it is programmed to operates to deliver any therapy signal, much less one that matches the claim language, and hence, Nevro's accusation of direct infringement must fail.  Finally, regardless of whether the purported infringement is direct or indirect, Nevro can make no plausible allegation that the Nalu system is programmed to deliver a therapy signal, or operates to deliver a therapy signal that falls within the scope of Nevro's claims.  Nalu therefore respectfully requests that the complaint be dismissed.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

A. James Isbester                   By:   */s/ Philip A. Rovner*
Megan M. Chung                            Philip A. Rovner (#3215)
KILPATRICK TOWNSEND &                     Jonathan A. Choa (#5319)
STOCKTON LLP                              P.O. Box 951
12255 El Camino Real, Suite 250           Wilmington, DE 19899
San Diego, CA  92130                      (302) 984-6000
                                          provner@potteranderson.com
Maureen P. Long                           jchoa@potteranderson.com
KILPATRICK TOWNSEND &
STOCKTON LLP                          *Attorneys for Defendant*
1001 West Fourth Street
Winston-Salem, NC  27101-2400

Dated:  May 4, 2020
6708174

- 17 -