IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NEVRO CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-291 (CFC) |
| | ) | |
| NALU MEDICAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## NEVRO'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT NALU MEDICAL'S MOTION TO DISMISS UNDER RULE 12(b)(6)

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
ccucuzzella@mnat.com

OF COUNSEL:

Michael A. Jacobs
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-7000

*Attorneys for Plaintiff Nevro Corp.*

Kenneth A. Kuwayti
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304-1018
(650) 813-5600

August 3, 2020

13999691.1

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS.....................................1

II.   SUMMARY OF ARGUMENT.....................................................2

III.  STATEMENT OF FACTS........................................................3

IV.   ARGUMENT.......................................................................6

    A.    Legal Standard.........................................................6

        1.    Nevro Needs Only to State a Plausible Claim ...........................6

        2.    Nalu Applies an Erroneously High Pleading Standard.............8

    B.    Nevro Adequately Alleges Direct Infringement ................................10

        1.    Nalu's Erroneous FDA Clearance Argument Is Fatal to
            Its Motion....................................................................10

        2.    Nevro Sufficiently Pleads That Nalu Meets the
            Frequency Claim Limitations ................................12

        3.    Nevro Sufficiently Pleads That Nalu Meets the
            Paresthesia-Free Claim Limitations.........................................17

        4.    Nalu's Challenge to '357 Patent Pleading Is Groundless........18

    C.    Nevro Adequately Pleads Inducement and Willfulness....................19

V.    CONCLUSION...................................................................22

# TABLE OF AUTHORITIES

**Page**

## Cases

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*,
   501 F.3d 1307 (Fed. Cir. 2007) ...........................................................................8

*Align Tech., Inc. v. 3Shape A/S*,
   339 F. Supp. 3d 435 (D. Del. 2018).....................................................................7

*Alston v. Parker*,
   363 F.3d 229 (3d Cir. 2004) ..............................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................2, 6, 7

*BioMérieux, S.A. v. Hologic, Inc.*,
   C.A. No. 18-21-LPS, 2018 WL 4603267 (D. Del. Sept. 25, 2018) .............14, 21

*Boston Sci. Corp. v. Nevro Corp.*,
   415 F. Supp. 3d 482 (D. Del. 2019)..............................................................7, 8, 9

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
   289 F.3d 801 (Fed. Cir. 2002) ............................................................................8

*DermaFocus LLC v. Ulthera, Inc.*,
   201 F. Supp. 3d 465 (D. Del. 2016)...............................................................7, 16

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
   888 F.3d 1256 (Fed. Cir. 2018) ..........................................................................7

*Dynamic Data Techs., LLC v. Google LLC*,
   C.A. No. 19-1529-CFC, 2020 WL 1285852
   (D. Del. Mar. 18, 2020) ....................................................................................21

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ..........................................................................8

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) .............................................................................7

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Kyowa Hakka Bio, Co. v. Ajinomoto Co.*,
 C.A. No. 17-313-MSG, 2018 WL 834583 (D. Del. Feb. 12, 2018)...................16

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
 869 F.3d 1372 (Fed. Cir. 2017) ........................................................................20

*Mod Stack LLC v. Aculab, Inc.*,
 C.A. No. 18-332-CFC, 2019 WL 3532185 (D. Del. Aug. 2, 2019)....................7

*Modern Telecom Sys., LLC v. TCL Corp.*,
 C.A. No. 17-583-LPS-CJB, 2017 WL 6524526
 (D. Del. Dec. 21, 2017).........................................................................................9

*Nalco Co. v. Chem-Mod, LLC*,
 883 F.3d 1337 (Fed. Cir. 2018) ...................................................................7, 16

*Nevro Corp. v. Boston Sci. Corp.*,
 955 F.3d 35 (Fed. Cir. 2020) .............................................................................1

*Nevro Corp. v. Stimwave Techs., Inc.*,
 C.A. No. 19-325-CFC, 2019 WL 3322368 (D. Del. Jul. 24, 2019) ..................17

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
 843 F.3d 1315 (Fed. Cir. 2016) ........................................................................21

*Prowire LLC v. Apple, Inc.*,
 CA No. 17-223-MAK, 2017 WL 3444689 (D. Del. Aug. 9, 2017) ..................16

*Raindance Techs., Inc. v. 10x Genomics, Inc.*,
 C.A. No. 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016) ....................9

*SIPCO, LLC v. Streetline, Inc.*,
 C.A. No. 16-830-RGA, 2017 WL 10795601
 (D. Del. June 21, 2017).........................................................................................9

*Umland v. Planco Fin. Servs., Inc.*,
 542 F.3d 59 (3d Cir. 2008) ...............................................................................14

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
  824 F.3d 1344 (Fed. Cir. 2016) ..........................................................................21

**Rules and Statutes**

35 U.S.C. § 271(f) ...........................................................................................12, 13

Fed. R. Civ. P. 15(a)(2) ............................................................................................22

Nalu's Motion to Dismiss misstates and ignores the detailed allegations in Nevro's First Amended Complaint, tries to generate disputes about facts that the Court must accept as true for purposes of Rule 12(b)(6), and misapplies the law that a plaintiff need not "prove its case at the pleading stage" so long as there is a plausible claim.  The motion should be denied.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Nevro filed its Complaint on February 28, 2020, claiming that the Nalu Neurostimulation System infringes Nevro's U.S. Patent Nos. 10,471,258 (the "'258 patent") and 9,333,358 (the "'358 patent").  On May 4, 2020, Nalu moved to dismiss Nevro's Complaint, contending that Nevro had not alleged sufficient facts to state a claim.  (D.I. 9, 10.)  While Nevro believed that its allegations were sufficient, it responded to Nalu's motion on June 1, 2020, by amending its Complaint to add additional factual allegations, including Nalu's public statements about uses of the Nalu Neurostimulation System.  (D.I. 14, 16.)  Nevro's First Amended Complaint ("FAC," D.I. 14) additionally asserted infringement of Nevro's U.S. Patent Nos. 8,712,533 (the "'533 patent"); 8,359,102 (the "'102 patent"); 9,327,125 (the "'125 patent"); and 9,333,357 (the "'357 patent").[1]  On

---

[1]    Nevro did not assert these patents in its original Complaint because they were at issue in an appeal from litigation between Nevro and Boston Scientific.  In April 2020, the Federal Circuit found the challenged claims of these patents valid and not indefinite.  *See Nevro Corp. v. Boston Sci. Corp.*, 955 F.3d 35, 43-44 (Fed. Cir. 2020).

July 6, 2020, Nalu moved to dismiss Nevro's FAC under Rule 12(b)(6). (D.I. 18, 19.)

## II.   SUMMARY OF ARGUMENT

Nevro's FAC goes well beyond the requirements of *Iqbal* and *Twombly* by providing 34 pages of detailed factual allegations setting forth Nevro's basis for claiming that Nalu infringes the asserted patents, along with identifications of specific portions of public documents from Nalu that establish infringement.

First, Nalu bases its motion on the erroneous premise that Nevro's claims require using the Nalu Neurostimulation System at frequencies beyond its FDA clearance.  This is not true for any of the patents at issue.  As Nevro alleges and Nalu cannot dispute, Nalu's FDA clearance is for frequencies *including* 1,500 Hz.  Five of the asserted patents cover a frequency range *including* 1,500 Hz, while the representative claim of the sixth patent does not require a particular frequency at all.

Second, Nalu's claim that Nevro has not plausibly alleged that Nalu meets the programming parameter limitations of the asserted patents is refuted by Nevro's detailed factual allegations about the Nalu Neurostimulation System, which are drawn from Nalu's own admissions.

Third, Nalu's claim that Nevro has not plausibly alleged that Nalu meets the paresthesia-free limitations of the asserted patents is again refuted by Nevro's detailed factual allegations, and the Nalu admissions described in those allegations.

Fourth, Nalu makes no serious challenge to the sufficiency of Nevro's infringement claim for the '357 patent (the representative claim of which is frequency-independent), and ignores Nevro's specific factual allegations about Nalu's infringement.

Fifth, Nalu's claim that Nevro has not sufficiently plead Nalu's knowledge of, or willful blindness to, infringement is refuted by Nevro's detailed allegations concerning Nalu's understanding of the scope of the asserted patents and citation to Nevro's patents as prior art to its own inventions, its direct involvement in setting programming parameters within the scope of those claims, and the high profile of Nevro's products and patents in the spinal cord stimulation ("SCS") industry.

## III.   STATEMENT OF FACTS

Nevro is a pioneering SCS company, which developed a novel approach for treating pain without generating paresthesia (a tingling, numbness, buzzing, or "pins-and-needles" sensation).  (FAC ¶¶ 4, 13-19.)  The commercial embodiment of Nevro's differentiated therapy uses high frequency signals to

3

deliver this stimulation.   (FAC ¶ 13.)   In order to protect its distinguishing innovations, Nevro has secured—and enforced—a strong patent portfolio.  (*See* FAC ¶¶ 21, 47.)

Nalu develops, manufactures, and sells the Nalu Neurostimulation System, an SCS system for treatment of pain in the trunk and limbs, and programs those devices in clinical settings.  (*See* FAC ¶¶ 7, 23, 33, 36.)  Nalu has already made a limited commercial launch of the Nalu Neurostimulation System in the U.S., in addition to exporting the system to other countries, and plans to make a full commercial launch this year.  (FAC ¶¶ 41, 46.)  Despite understanding the scope of Nevro's patent protection—and even identifying asserted Nevro patents as prior art to its own inventions—Nalu elected to implement Nevro's patented technology in its own products.  (*See, e.g.,* FAC ¶¶ 47, 69, 79, 89, 99, 110.)

Nevro's FAC provides detailed allegations that the Nalu Neurostimulation System satisfies the limitations of the claims at issue.  For instance, Nevro alleges that the accused system: includes an implantable pulse generator that provides electrical stimulation to the spinal cord (FAC ¶¶ 24-25); is implanted in the body and delivers electrical pulses to leads in the epidural space (FAC ¶ 27); has been implanted at the T9 vertebra (FAC ¶ 40); and includes an external power source that is wirelessly coupleable to the pulse generator to transmit power to the pulse generator via RF signals.  (FAC ¶¶ 30-32.)  Nevro also

alleges that Nalu is directly involved in programming the Nalu Neurostimulation System, including through Nalu staff working closely with physicians. (FAC ¶ 33.)  Nalu does not dispute the sufficiency of any of these allegations.

Nevro also provides detailed, specific allegations setting forth how the Nalu Neurostimulation System satisfies the frequency and paresthesia-free limitations of the claims at issue.   By way of example, Nevro alleges (with independent support from attached exhibits) that:

- Nalu sought and obtained FDA regulatory clearance to promote its system at the infringing frequency of 1,500 Hz.[2]  (FAC ¶¶ 7, 37, 49, 54-55, 65-66, 75-76, 86-87, 95-96.)

- The only publicly available user manual for the Nalu Neurostimulation System shows that it operates up to the infringing frequency of 10,000 Hz, and with pulse widths and amplitudes that meet the '357 patent claims.  (FAC ¶¶ 7, 34, 45, 49, 54-55, 65-66, 75-76, 86-87, 95-96.)

- Nalu employees have written journal abstracts describing the use of the Nalu Neurostimulation System at high frequencies (understood since Nevro's market entry to mean 1,500 Hz or above), including on human patients.  (*See* FAC ¶ 43; Ex. 11 at ID 13296.)

---

[2]    1,500 Hz is 1.5 kHz.  10,000 Hz is 10 kHz.

- Nalu employees have made industry presentations and written journal abstracts describing the use of the Nalu Neurostimulation System to deliver paresthesia free pain relief, including paresthesia-free pain relief using high frequency stimulation. (FAC ¶¶ 38-44.)

- Nalu has sought patent protection for high frequency, paresthesia-free therapy (and acknowledged that Nevro patents in suit are prior art to those claims). (FAC ¶¶ 45, 47, 69, 79, 89, 99, 110.)

Nevro also pleads Nalu's awareness of infringement, further supported by Nevro's allegations concerning Nalu's familiarity with the claims' scope and Nevro's prior litigations, its direct involvement in programming patients, its pursuit of infringing regulatory approval, and its authorship of abstracts describing infringing studies that are intended to promote its system. (FAC ¶¶ 33, 38-44, 49, 57-58, 68-69, 78-79, 88-89, 98-99, 109-110.)

## IV.   ARGUMENT

### A.   Legal Standard

#### 1.   Nevro Needs Only to State a Plausible Claim

This Court is familiar with the standard under *Iqbal* and *Twombly* that a complaint must set forth enough facts to state a claim to relief that is "plausible on its face," and that determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citations omitted); *see also Mod Stack LLC v. Aculab, Inc.*, C.A. No. 18-332-CFC, 2019 WL 3532185, at *4 (D. Del. Aug. 2, 2019) (discussing *Iqbal/Twombly* pleading requirements); *Boston Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 489-90 (D. Del. 2019) (same).  In the context of patent litigation, and of relevance here, "it is logical to presume that the defendant has greater access to and, therefore, more information about its accused method" and the determination of pleading sufficiency should account for "whether the information demanded by defendant is in the public domain and, therefore, reasonably available to plaintiff."  *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 469-70 (D. Del. 2016).

Importantly, "a plaintiff is not required to 'prove its case at the pleading stage.'"  *Mod Stack*, 2019 WL 3532185, at *4 (quoting *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)).  In considering a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 440-41 (D. Del. 2018) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)).  Thus, to be sufficient, "the complaint must merely 'place the potential infringer . . . on notice of what activity . . . is being accused of infringement.'"  *Mod Stack*, 2019 WL 3532185, at *4 (quoting *Nalco*, 883 F.3d at 1350); *see also Disc Disease Sols.*

7

*Inc. v. VGH Sols., Inc*., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (specific facts not necessary, only fair notice of the claim and the ground upon which it rests).

### 2.    Nalu Applies an Erroneously High Pleading Standard

Nalu's motion relies on a pleading standard that is unsupported by the cases it cites, and insists that the complaint must specify identities and residences of particular patients who received infringing therapy as well as the identities of the Nalu agents who programmed that therapy.   (Opening Brief in Support of Motion to Dismiss Under Rule 12(b)(6), D.I. 19 ("Br."), at 13.)  Nalu relies heavily on *Fujitsu* and *ACCO Brands*.   (*See* Br. at 10, 11, 13, 15.)   Those opinions concerned appeals of *summary judgment* and *judgment as a matter of law*, respectively, and are hence irrelevant to the pleading standards here.  *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1325 (Fed. Cir. 2010); *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.,* 501 F.3d 1307, 1314 (Fed. Cir. 2007); *see also Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002) (cited by Nalu, Br. at 9, but discussing summary judgment standards).

The *Boston Scientific* decision cited by Nalu also does not support Nalu's motion.  In that case, this Court dismissed certain infringement claims that merely recited limitations "without explanation" of how they were practiced, "ma[de] no attempt" to connect the accused systems to the asserted claims, and "d[id] not provide fair notice of infringement."  *Boston Sci.*, 415 F. Supp. 3d

at 489-90.  In contrast, the Court permitted a claim to go forward that identified accused system components and was "sufficient to give [defendant] notice of how it may infringe." *Id.* at 491.

Nalu's other authority confirms only that courts in this district have dismissed claims with virtually no underlying factual allegations. *SIPCO, LLC v. Streetline, Inc.*, C.A. No. 16-830-RGA, 2017 WL 10795601, at *1-2 (D. Del. June 21, 2017) (complaint did not contain a "short and plain statement" of the claim and was "only understandable (if at all) by a person of ordinary skill in the art"); *Modern Telecom Sys., LLC v. TCL Corp.*, C.A. No. 17-583-LPS-CJB, 2017 WL 6524526, at *2-3 (D. Del. Dec. 21, 2017) (complaint alleged, without supporting facts, that defendants practiced a wireless standard and that standard infringed the asserted patent); *Raindance Techs., Inc. v. 10x Genomics, Inc.*, C.A. No. 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016) (requiring amendment where there was "nothing" in complaint as to one set of claim limitations, "haz[y]" allegations about another patent, and "no attempt to relate" factual assertions to other patents).

### B.    Nevro Adequately Alleges Direct Infringement

### 1.    Nalu's Erroneous FDA Clearance Argument Is Fatal to Its Motion

Nalu relies heavily on the argument that Nevro's infringement theory is implausible because it requires the Nalu Neurostimulation System to operate at frequencies outside of its FDA clearance.  This argument is factually incorrect.

Nalu repeatedly emphasizes that the patent claims require it to program at a frequency beyond its FDA clearance.  (*See, e.g.*, Br. at 3-4 ("In other words, the FDA has only cleared the Nalu system for use at frequencies that do not meet the requirements of the asserted patents"), at 3 ("Nowhere does Nevro offer reason to believe that Nalu is encouraging clinicians in the field to use the Nalu device in ways that are not cleared by the FDA"), at 14 ("This is not a situation in which Nalu is accused of infringing Nevro's patents by doing something that is otherwise within Nalu's FDA cleared therapy parameters").)

But as Nalu simultaneously acknowledges, Nevro "accurately allege[s]" that Nalu has FDA clearance for frequencies as high as 1,500 Hz.  (Br. at 3; FAC ¶¶ 7, 37, 49, 54-55, 65-66, 75-76, 86-87, 95-96.)  This clearance allows Nalu to market and promote the Nalu Neurostimulation System in the U.S. for therapy at 1,500 Hz.  (FAC ¶¶ 7, 37, 49.)

And as Nalu also acknowledges, five of Nevro's six asserted patents have frequency limitations that include 1,500 Hz as an infringing frequency.

(Br. at 10-11; FAC ¶¶ 53, 64, 75, 85, 94; Ex.[3] 1 ('258 patent) cl. 1; Ex. 2 ('358 patent) cl. 1; Ex. 3 ('533 patent) cl. 1; Ex. 4 ('102 patent) cl. 1; Ex. 5 ('125 patent) cl. 18.)

Contrary to Nalu's argument, Nevro thus alleges that the Nalu Neurostimulation System infringes these patents even within its FDA clearance frequency range:

> Nalu has FDA clearance to market the system in the United States for use at frequencies up to and *including* 1,500 Hz. A frequency of 1,500 Hz or above satisfies the frequency limitation of, *e.g.*, claim 1 of the '258 patent.

(FAC ¶ 54 (emphasis in original); *see also* FAC ¶¶ 65 ('358 patent); 75 ('533 patent); 86 ('102 patent); 95 ('125 patent).)

The representative claim of the sixth patent, Nevro's '357 patent, does not recite a frequency limitation at all, as discussed in further detail below.  Thus, Nalu's FDA approved frequency meets the frequency limitations of the representative claims from the five patents that require such a parameter, and Nevro need not plead a frequency parameter for the sixth patent.  Nalu's position that Nevro's infringement theory requires frequencies outside Nalu's FDA clearance is meritless.

Moreover, Nalu's FDA clearance only bears on its ability to promote the Nalu Neurostimulation System within the U.S.  Nalu can export the Nalu

---

[3]     Except where noted, exhibit citations are to the FAC exhibits, D.I. 14-1.

Neurostimulation System to other countries, and has done so.  (*See, e.g.,* FAC ¶ 41; Ex. 10 (listing foreign study centers); Br. at 13 n.7 (acknowledging Nalu studies outside the U.S).)    Nevro alleges that Nalu's exportation of the Nalu Neurostimulation System constitutes infringement under 35 U.S.C. § 271(f).  (*See* FAC ¶¶ 41, 43, 49, 56, 67, 77, 97, 108.)   Beyond generally challenging Nevro's pleading of direct infringement, Nalu nowhere contests the sufficiency of Nevro's pleading of infringing exportation under § 271(f).  And, as Nalu acknowledges, the FDA clearance would not prevent "off-label" programming of the Nalu system in the U.S. at even higher frequencies (especially given the 10,000 Hz upper frequency disclosed in Nalu's user manual).  (*See* FAC ¶¶ 34-35.)  Nalu's FDA clearance argument is a keystone of its Motion to Dismiss, but it is fundamentally wrong.

## 2.    Nevro Sufficiently Pleads That Nalu Meets the Frequency Claim Limitations

Nalu's claim that Nevro does not otherwise provide support for its allegations about the Nalu Neurostimulation System's infringing frequencies is similarly without merit.  Nevro alleges that Nalu meets the frequency limitations for each of the asserted patents (other than the '357 patent, the representative claim of which has no frequency limitation).  (*See, e.g.,* FAC ¶¶ 55, 66, 76, 87, 96.) While these paragraphs of Nevro's complaint themselves provide factual

allegations to support this claim (*id.*), the body of Nevro's complaint goes even further.

First, and as discussed above, Nevro alleges that Nalu specifically sought and obtained FDA clearance to promote the Nalu Neurostimulation System for use at an infringing frequency of 1,500 Hz, and attaches this clearance. (*See, e.g., id.*; FAC ¶¶ 7, 37, 49; Ex. 7.)  It is more than plausible that the Nalu Neurostimulation System meets the scope of its U.S. regulatory clearance and has been used to provide therapy consistent with that clearance.

Second, Nevro alleges that the Nalu Neurostimulation System delivers frequencies up to the infringing frequency of 10,000 Hz.  (FAC ¶¶ 7, 34, 45, 49, 54-55, 65-66, 75-76, 86-87, 95-96.)  While not necessary to state a claim, in further support of these allegations, Nevro attaches the Instruction for Use ("IFU") for the Nalu External Transmitter Module.  (FAC ¶ 34; Ex. 8.)  This document appears to be the only public version of a Nalu user manual.  (FAC ¶¶ 34-35.)  Nevro alleges, and the manual supports, that the stimulation parameters for the Nalu Neurostimulation System include frequencies up to 10,000 Hz.  (FAC ¶ 34; Ex. 8, at 10.)  Moreover, Nalu has specifically sought patent protection for providing stimulation at 10,000 Hz.  (*See, e.g.,* FAC ¶¶ 45, 55; Ex. 14 at cls. 55, 58.)  It is more than plausible that the Nalu Neurostimulation System meets and has been

used within the full range of its designed parameters, and that Nalu would seek patent protection over demonstrated functionalities of its product.

Nalu contends that the IFU is "irrelevant," suggesting that the manual is outdated or unreliable. (*See* Br. at 12.) Yet Nalu's brief carefully avoids taking a position on whether Nalu issued the IFU and whether it is consistent with the stimulation parameters of the Nalu Neurostimulation System. Nalu's factual disputes are inappropriate for a motion to dismiss. *See Umland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (court must accept factual allegations as true). And, despite alluding to "contradict[ions]" in the record, Nalu does nothing but identify timing considerations and a 7 mm and 5 gram difference in the "approximate" measurements of one system component between two documents. (Br. at 12; Ex. 8 at 10.) Nalu provides no reason to believe there is any contradiction regarding the stimulation parameters for the Nalu Neurostimulation System. The only publicly available Nalu user manual supports Nevro's factual allegations on programming parameters. *See BioMérieux, S.A. v. Hologic, Inc.*, C.A. No. 18-21-LPS, 2018 WL 4603267, at *4 (D. Del. Sept. 25, 2018) (appropriate for plaintiffs to rely on published package inserts for medical product to support allegations).

Third, the FAC alleges that Nalu's own studies have employed high frequency stimulation to provide paresthesia-free pain relief, and attaches a Nalu-

14

authored abstract describing such a study.  (FAC ¶ 43; Ex. 11 at ID 13296.)   As Nevro alleges, since its entry into the SCS market, "high frequency" has been understood to mean frequencies of at least 1,500 Hz and above.  (FAC ¶ 43.)  Nalu's dispute of this factual allegation (Br. at 6) is inappropriate on a motion to dismiss, and is also curious given that elsewhere Nalu favorably quotes Nevro patents describing sub-1,500 Hz treatments as "standard" therapy.  (Br. 3 n.3.)  This study, and Nevro's factual allegations regarding the study, support a plausible claim of infringement.[4]

Fourth, Nalu's programming parameters argument fails because it assumes all of Nevro's claims must be construed to require delivery of an infringing therapy signal to a patient.  (*See, e.g.,* Br. at 10, 13.)   But the representative claim of the '125 patent covers a system with a "*means for generating* . . . a signal frequency in a frequency range from 1.5 kHZ to 100 kHz." (FAC ¶ 94; Ex. 5 at cl. 18 (emphasis added).)  And the representative claim of the '258 patent covers a system that "in operation" generates the claimed signal.  (FAC ¶ 53; Ex. 1 at cl. 1.)   Neither claim expressly recites that the system has been "programmed or configured" to deliver particular programming to a particular

---

[4]    Nalu raises a factual dispute about whether this clinical study is subject to a regulatory safe harbor.  (Br. at 14 n.9.)  Nevro alleges (and Nalu's 510(k) clearance shows) that Nalu did not rely on any clinical study data in its FDA submission. (FAC ¶¶ 41, 43; Ex. 7 at 5-18 to 5-19 (noting that Nalu submitted biocompatibility and animal testing and did not rely on clinical data).)

patient, as Nalu contends.[5]  (*See* Br. at 11-12.)  While Nalu may disagree about the construction of these claim terms, it is "not appropriate to resolve these disputes [over claim scope] . . . on a Rule 12(b)(6) motion, without the benefit of claim construction."  *Nalco*, 883 F.3d at 1350.

Nevro has presented sufficient factual allegations supporting its claim that the Nalu Neurostimulation System meets the frequency limitations of Nevro's asserted patents, and also that at least one patient has received therapy with a signal of 1,500 Hz or higher.  (*See* FAC ¶¶ 55, 66, 76, 87, 96.)  Moreover, as "the precise software parameters and therapy parameters used on patients are non-public and uniquely within Nalu's control" (*id.*), Nalu's insistence that Nevro must provide particularized patient-level allegations, including the name of the patient who was programmed, is mistaken.  This is information that Nevro could not reasonably be expected to have.  *See Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, C.A. No. 17-313-MSG, 2018 WL 834583, at *5 (D. Del. Feb. 12, 2018) (plaintiff need not plead the exact process used by defendant where defendant has not publicly disclosed it); *Prowire LLC v. Apple, Inc.*, CA No. 17-223-MAK, 2017 WL 3444689, at *1 (D. Del. Aug. 9, 2017) (denying motion to dismiss where "defendant's arguments focus on information arguably within its sole possession"); *DermaFocus*, 201 F.Supp.3d at 469-470 (denying motion to dismiss where "it is not apparent to

---

[5]     The FAC nonetheless contains adequate factual allegations regarding actual programming, as discussed above.

the court whether the information demanded by the defendant is in the public domain").

### 3.   Nevro Sufficiently Pleads That Nalu Meets the Paresthesia-Free Claim Limitations

Nevro's FAC contains more than sufficient allegations to state a plausible claim that the Nalu Neurostimulation System meets the paresthesia-free limitations of the asserted patents.   Though the language of individual claims varies, representative claims of the asserted patents recite a non-paresthesia producing therapy signal.   (FAC ¶¶ 53, 64, 75, 85, 94, 105; Ex. 1 ('258 patent) cl. 1; Ex. 2 ('358 patent) cl. 1; Ex. 3 ('533 patent) cl. 1; Ex. 4 ('102 patent), cl. 1; Ex. 5 ('125 patent) cl. 18; Ex. 6 ('357 patent) cl. 1.)   Nevro sufficiently alleges that the Nalu Neurostimulation System and Nalu's use of it satisfy this claim limitation. (FAC ¶¶ 7, 54-55, 65-66, 75-76, 86-87, 95-96, 106-107.)

Again, Nevro's FAC goes well beyond the minimum required factual allegations.   For example, Nevro details a recent industry conference presentation in which Nalu represented that the Nalu Neurostimulation System had been programmed by Nalu employees to deliver therapy that is "paresthesia-independent" and does not require "paresthesia mapping."   (FAC ¶ 38.)   Nevro also details a related Nalu study with "patients reporting no paresthesias," which acknowledges the benefits of high frequency therapy and contrasts the study stimulation pattern against low frequency therapy.   (FAC ¶ 39.)   As the Court is

aware, companies in the SCS industry use alternative language for paresthesia-free therapy, sometimes in an attempt to avoid Nevro's patents.  *See Nevro Corp. v. Stimwave Techs., Inc.*, C.A. No. 19-325-CFC, 2019 WL 3322368, at *6-7 (D. Del. July 24, 2019).

Nevro also describes and attaches abstracts concerning human clinical studies that used the Nalu Neurostimulation System to deliver "paresthesia-free stimulation patterns" and used "patterned high frequency" to provide "paresthesia-free pain relief."  (FAC ¶¶ 42-43; Exs. 9, 11 at ID: 13296.)  The authors of these abstracts include a Nalu executive, Nalu consultants, and a Nalu advisory board member.  (*Id.*)  Nalu's claim that "the FAC is silent as to whether the purported patient experienced paresthesia" (Br. at 13 n.8) is baseless.

### 4.    Nalu's Challenge to '357 Patent Pleading Is Groundless

Unlike the other asserted patents, the representative claim of the '357 patent does not require a particular frequency, but instead recites sequential bi-phasic pulses having a pulse width between 10 microseconds and 333 microseconds, and an amplitude between 0.5 mA and 10 mA.  (FAC ¶ 105; Ex. 6 cl. 1.)  Nalu disputes only whether Nevro has sufficiently pleaded the bi-phasic pulse limitation.[6]  (Br. at 2, 13.)  But Nevro factually pleads that the "Nalu

---

[6]    To the extent Nalu belatedly challenges Nevro's pleading of the pulse width and amplitude limitations, its argument fails for much the same reason as its

Neurostimulation System generates a charge balanced (delayed) biphasic asymmetrical waveform, which Nevro understands to constitute sequential biphasic pulses," and attaches Nalu's FDA clearance as confirmation.  (FAC ¶¶ 37, 106; Ex. 7 at 5-11.)

Nalu also wrongly asserts that Nevro "conceded" it has no patent rights below 1,200 Hz.  (Br. at 3 n.3.)  Nalu badly mischaracterizes the BSC transcript—Nevro made no such statement (*see* Ex. A (BSC Hearing Transcript), filed herewith, at 18:25-19:3, 69:7-12 (portions cited by Nalu)), and the asserted claims at that stage of the BSC litigation did not include frequency-independent claims, such as the asserted '357 patent claim 1 in this case.

### C.    Nevro Adequately Pleads Inducement and Willfulness

Nalu does not dispute that Nevro has sufficiently pleaded knowledge of the patents in suit, but argues that Nevro does not sufficiently plead knowledge of infringement.  Nalu again ignores the extensive allegations in the FAC.  Nevro specifically alleges that Nalu has intentionally instructed others to use the Nalu Neurostimulation System in an infringing manner, and that Nalu knows the Nalu Neurostimulation System infringes the asserted patents or is willfully blind to that infringement.  (FAC ¶¶ 49, 57-58, 68-69, 78-79, 88-89, 98-99, 109-110.)

---

frequency limitation argument:  Nevro factually alleges that Nalu meets those limitations, and further provides Nalu's IFU and FDA clearance, both of which show that Nalu's pulse width and amplitude overlap with the claimed range.  (FAC ¶¶ 34, 37, 106.)

Nevro further alleges specific facts supporting Nalu's knowledge or willful blindness to infringement.  As an initial matter, Nalu has knowledge of the scope of Nevro's patents, not merely their existence, as Nalu identified multiple Nevro patents as prior art to its own patent application (which included claims to high frequency and paresthesia-free therapy), including patents asserted in this case.  (*See* FAC ¶¶ 47,[7] 69, 79, 89, 99, 110; Ex. 15.)  Nalu also understands the scope of Nevro's patents—including the programming parameters and paresthesia-free functionality thereof—as well as the features of Nevro's products based on the detailed reporting on Nevro's prior patent litigation, involving many of the patents asserted here.  (*See* FAC ¶ 45); *see Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1380 (Fed. Cir. 2017) (knowledge of infringement pleaded where defendant knew of patent scope and the products covered thereby).

Nevro further establishes that Nalu is aware of its programming parameters and the effects of its therapy.  Nalu works directly with clinicians to implant and program its devices, including by itself programming the parameters for therapy, and is therefore aware of how the accused systems are programmed and used.  (FAC ¶¶ 33, 49.)  Moreover, Nalu specifically applied for FDA clearance with programming parameters overlapping Nevro's claims, issued an

---

[7]      A typographical error in this paragraph refers to the "'869 application," but should refer to the '829 application.  Nevro's other allegations reference the '829 application.

IFU showing a frequency range up to 10,000 Hz, and then went on to promote high frequency, paresthesia-free therapy via industry press.  (FAC ¶¶ 38-44; Ex. 7 at 5-10; Ex. 8 at 10); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016) (inducement can be shown through user manuals or advertising); *see also Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016) ("knowledge of infringement can be inferred from circumstantial evidence").

It is more than plausible that an entity that knows (1) the programming parameters and paresthesia-free nature of Nevro's claims, and (2) that it is using such programming parameters to delivery paresthesia-free pain relief either knows of its infringement or has willfully blinded itself to that infringement.  This is particularly the case in an industry as small and competitive as spinal cord stimulation.  *See BioMérieux*, 2018 WL 4603267, at *5 (plausible claim for induced infringement where the invention had achieved notoriety and parties competed in small industry).[8]

---

[8]    All of these detailed factual allegations make this case very different from the Court's recent decision in *Dynamic Data*, where the Court dismissed pre-suit inducement claims where Google had received a notice letter listing hundreds of patents, and, before issuance of the asserted patents, had cited one application in the family as prior art.  *Dynamic Data Techs., LLC v. Google LLC*, C.A. No. 19-1529-CFC, 2020 WL 1285852, at *1-2 (D. Del. Mar. 18, 2020), *adopted at* 2020 WL 3103786 (D. Del. June 11, 2020).

Nevro has sufficiently alleged knowledge of, or willful blindness to, infringement.

## V.    CONCLUSION

For the reasons set forth above, Nalu's Motion to Dismiss should be denied.   To the extent the Court finds any claim of Nevro's FAC insufficiently pleaded, Nevro requests that it dismiss without prejudice and permit Nevro leave to amend.  *See* Fed. R. Civ. P. 15(a)(2); *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004) ("Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility.").

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____
Rodger D. Smith II (#3778)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
ccucuzzella@mnat.com

OF COUNSEL:

Michael A. Jacobs
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
(415) 268-7000

Kenneth A. Kuwayti
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304-1018
(650) 813-5600

*Attorneys for Plaintiff Nevro Corp.*

August 3, 2020

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that on August 3, 2020, this brief complies with the type and font limitations set forth in the Standing Order Regarding Briefing in All Cases, because it contains 4,883 words, which were counted by using the word count feature in Microsoft Word.

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 3, 2020, upon the following in the manner indicated:

Philip A. Rovner, Esquire                                    *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON LLP
P.O. Box 951
Wilmington, DE 19899
*Attorneys for Defendant*

A. James Isbester, Esquire                                  *VIA ELECTRONIC MAIL*
Megan M. Chung, Esquire
KILPATRICK TOWNSEND & STOCKTON LLP
12255 El Camino Real, Suite 250
San Diego, CA 92130
*Attorneys for Defendant*

Maureen P. Long, Esquire                                    *VIA ELECTRONIC MAIL*
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
*Attorneys for Defendant*

*/s/ Rodger D. Smith II*

_____
Rodger D. Smith II (#3778)